NATIONAL CAFÉ SERVICES, LTD., Appellant,

v.

Perry PODARAS, Appellee.

No. 10–01–00244–CV.

Court of Appeals of Texas, Waco.

Aug. 4, 2004.

---

Thomas G. Overbeck, Houston, for Appellant.

Robert A. Axelrad, Leslie C. Taylor, Zimmerman, Axelrad, Meyer, Stern & Wise, P.C., Houston, for Appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Perry Podaras filed a declaratory judgment action against National Café Services, Ltd. seeking a declaration that a non-competition clause in the partnership agreement is unenforceable. The court granted a partial summary judgment in favor of Podaras on this issue. After a subsequent hearing, the court awarded attorney's fees to Podaras. National Café presents five issues in which it contends: (1) the trial court erred in declaring the non-competition clause unenforceable; and (2) the court abused its discretion by awarding Podaras attorney's fees because: (a) he should not have prevailed on his request for declaratory relief; (b) the partnership agreement was not a contract for personal services; (c) he did not properly segregate the fees incurred for prosecution of his declaratory judgment action from those incurred for prosecution of another claim he ultimately non-suited; and (d) he presented no evidence or factually insufficient evidence that the attorney's fees awarded are reasonable.

Because we conclude that National Café presented evidence raising a genuine issue of material fact on the question of whether Podaras has released his right to challenge the enforceability of the non-competition clause, we reverse the judgment and remand this cause to the trial court for further proceedings.

## BACKGROUND

Podaras signed an operating agreement with Angelika Houston, Inc. to run a café in the lobby of a downtown Houston theater, the Angelika Film Center. To secure the funds necessary for the initial invest-

ment required under the operating agreement, Podaras formed a limited partnership, National Café, with Podaras serving as general partner.

The partnership agreement contains a non-competition clause [1] (hereinafter, the "covenant") which provides in pertinent part:

> The General Partner expressly covenants and agrees (hereinafter designated **"Covenant"**) that, while the Partnership is operating the Café and for a period of one (1) year thereafter, unless otherwise expressly agreed in writing by the Limited Partner (which agreement, if any, of the Limited Partner may be subject to such conditions and limitations as the Limited Partner may, from time to time, require), the General Partner shall not, in any capacity whatsoever (as an employee, employer, consultant, agent, principal, partner, stockholder, officer, director, or in any other capacity) engage, or otherwise directly or indirectly participate in, any business similar to the Partnership's business within a seven (7) mile radius of the Lease Space.

Podaras's café did not meet expectations, and he was unable to satisfy his financial obligations under the partnership agreement. Podaras signed an agreement (the "release") with Houston Entertainment Services, Inc. ("HES") which assigned his interest in National Café to HES, released him from any further liability under the partnership agreement, and released HES, National Café, and Angelika from any claims "which Podaras may have as of the date of this Agreement."

In the release, Podaras expressly acknowledged that "all of the provisions of the [Partnership] Agreement are in full force and effect as written and entered into, and are hereby ratified and confirmed."

At an undetermined time, Podaras began planning a discotheque with a bar in the same vicinity. National Café obtained [2] a copy of a letter from Blake Cordish, the developer for the Bayou Place entertainment complex (where the Angelika Film Center is located), to Parris Holmes, Jr., a potential investor in the new project, in which Cordish discussed funding for the project. National Café then sent a letter to Cordish and Holmes advising them of the covenant and of National Café's opinion that the planned venture would violate the covenant. After receiving this letter, Holmes decided against giving financial backing to the project. Nevertheless, Podaras commenced a similar project (the Gatsby Social Club) with other investors about one year later.

Podaras filed suit alleging that the covenant is unenforceable and that National Café's correspondence to Cordish and Holmes tortiously interfered with these business relationships. National Café answered Podaras's suit with a general denial and asserted numerous affirmative defenses. National Café counterclaimed: (1) requesting reformation of the covenant if

---

1. Podaras's operating agreement with Angelika also contains a non-competition clause. However, his motion for partial summary judgment challenges the enforceability of only the non-competition clause in the partnership agreement. Accordingly, this opinion addresses only the enforceability of the clause in the partnership agreement. *See Fletcher v. Edwards,* 26 S.W.3d 66, 74 (Tex.App.-Waco

2000, pet. denied) (on appeal from summary judgment, "[w]e consider only those grounds 'the movant actually presented to the trial court' in the motion") (quoting *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996)).

2. According to Podaras, a secretary apparently sent a copy of the letter to National Café by mistake.

.

found unenforceable as written; (2) seeking specific performance and a permanent injunction; and (3) alleging promissory estoppel and unjust enrichment.

Podaras filed a motion for partial summary judgment contending that he is entitled to judgment as a matter of law declaring that the covenant is unenforceable because it imposes unreasonable restrictions of time, location and activity and because it is not ancillary to an otherwise enforceable agreement.

National Café filed a response asserting the affirmative defenses of ratification and release. National Café also asserted that the covenant is enforceable because it is ancillary to an otherwise enforceable agreement and because it imposes reasonable restrictions of time, location and activity. Finally, National Café argued in the alternative that the motion should be denied because, if the court found the covenant unenforceable as written, section[3] 15.51 of the Business and Commerce Code requires the court to reform the covenant rather than declare it unenforceable. *See* TEX. BUS. & COM.CODE. ANN. § 15.51 (Vernon 2002).

In reply, Podaras argued that an unenforceable covenant not to compete is void as against public policy and cannot be ratified. He also contended that section 15.52 preempts the common-law affirmative defenses raised by National Café. *Id.* § 15.52 (Vernon 2002). He reiterated that the covenant is not ancillary to an otherwise enforceable agreement and that it imposes unreasonable restrictions on time, location and activity. He concluded by arguing that reformation is unavailable be-

cause the covenant is not ancillary to an otherwise enforceable agreement and because the time and activity restrictions are too vague and indefinite.

The court granted Podaras's motion without specifying the basis for its ruling. The court awarded attorney's fees to Podaras in an amount to be determined thereafter. Podaras non-suited his tortious interference claim. National Café non-suited its counterclaims. The court later held a hearing on the issue of attorney's fees. The court awarded Podaras $52,000 in trial attorney's fees, $5,100 for legal expenses, and $15,000 in appellate attorney's fees.

## MOOTNESS

Podaras contends that the issue of whether the covenant is enforceable has been rendered moot because National Café non-suited its counterclaims for affirmative relief. Thus, he concludes that the only issue we must resolve is the propriety of the attorney's fee award.

 It is axiomatic that, apart from two exceptions not applicable to this case,[4] this Court does not have jurisdiction to address issues which have been rendered moot. *Gen. Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 570 (Tex.1990); *Tex. Dept. of Pub. Safety v. Ackerman,* 31 S.W.3d 672, 675 (Tex.App.-Waco 2000, pet. denied). Thus, "a controversy must exist between the parties at every stage of the legal proceedings, including the appeal." *Williams v. Lara,* 52 S.W.3d 171, 184 (Tex. 2001). Accordingly, when an appellee has non-suited claims for affirmative relief, the appeal may be rendered moot. *E.g.,*

---

**3.** The term "section" as used hereinafter refers to a section of the Business and Commerce Code unless otherwise indicated.

**4.** The Supreme Court has recognized 2 exceptions to the mootness doctrine: (1) the

capable-of-repetition-yet-evading-review exception; and (2) the collateral consequences exception. *Gen. Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 571 (Tex.1990).

*McNeill v. Hubert,* 119 Tex. 18, 22–23, 23 S.W.2d 331, 333 (1930).

Podaras sought attorney's fees in his summary judgment motion under section 15.51(c) and under section 37.009 of the Uniform Declaratory Judgments Act. Tex. Bus. & Com.Code. Ann. § 15.51(c); Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1997). A promisor such as Podaras can obtain attorney's fees under section 15.51(c) only if the "primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services" and the promisor establishes that:

(1) the promisee knew when the covenant was executed that it contained unreasonable restrictions of time, location or scope of activity;

(2) "the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee;" and

(3) "the promisee sought to enforce the covenant to a greater extent than was necessary to protect the goodwill or other business interest of the promisee."

Tex. Bus. & Com.Code. Ann. § 15.51(c).

■ Conversely, a party to a declaratory judgment action need not prevail on the merits to recover attorney's fees. *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 637 (Tex.1996); *Brush v. Reata Oil & Gas Corp.,* 984 S.W.2d 720, 729 (Tex.App.-Waco 1998, pet. ref'd). Thus, assuming without deciding that attorney's fees can be awarded in a declaratory judgment suit brought to construe a covenant not to compete, it could be argued that the propriety of the trial court's decision on the merits regarding the enforceability of the covenant should have no bearing on the attorney's fee award. We think it does however.

■ A trial court's decision to award attorney's fees under the Uniform Declaratory Judgments Act is based in part on the trial court's exercise of discretion to determine what, if any, fees are "equitable and just." Tex. Civ. Prac. & Rem.Code Ann. § 37.009; *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). Surely, the trial court bases that exercise of discretion in part on whether a party prevails on the merits. In fact, the trial court in this case recited in Conclusion of Law No. 5, "The court finds that the attorney's fees awarded herein are equitable and just. The court finds that Podaras succeeded upon his claim."

The trial court stated in Conclusion of Law No. 1 that it was awarding attorney's fees to Podaras under section 38.001 of the Civil Practice and Remedies Code,[5] section 37.009 of the Uniform Declaratory Judgments Act, "and/or" section 15.51. To determine the propriety of the attorney's fees awarded to Podaras under either of the statutory provisions at issue, we must first decide whether he should have prevailed on the merits. *But see Lavely v. Heafner,* 976 S.W.2d 896, 897 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (dismissing procedurally similar appeal in its entirety as moot even though appellant challenged propriety of attorney's fee award). Accordingly, we conclude that this appeal is not moot. *See Pinnacle Gas Treating, Inc. v. Read,* 104 S.W.3d 544, 545–46 (Tex.2003) (per curiam) (appeal not moot because propriety of damages award hinged on whether trial court properly dismissed prior proceeding).

**THE COVENANT**

National Café contends in its first issue that the court erred in declaring that the

---

5. However, Podaras did not allege an entitlement to attorney's fees under section 38.001 in the trial court and does not argue on appeal that he is entitled to attorney's fees under this statute.

covenant is unenforceable because: (1) Podaras ratified the covenant; (2) he released any claim that the covenant is unenforceable; (3) the covenant is ancillary to an otherwise enforceable agreement; (4) the covenant contains reasonable limitations as to time, location, and scope of activity to be restrained; and (5) the appropriate remedy would be reformation rather than a declaration of unenforceability if the covenant were unenforceable as written.

Because National Café raised the affirmative defense of release in its response and presented evidence raising a genuine issue of material fact as to each element of this affirmative defense, we will sustain National Café's first issue.

■■■ A release by a promisor in a covenant not to compete can estop the promisor from later challenging the validity of the covenant. *See Am. Fracmaster, Ltd. v. Richardson,* 71 S.W.3d 381, 389–90 (Tex.App.-Tyler 2001, pet. granted w.r.m.). A valid release constitutes "an absolute bar to any right of action on the released matter." *Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex. 1993); *accord Lehmann v. Har–Con Corp.,* 76 S.W.3d 555, 565 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *Grimes v. Andrews,* 997 S.W.2d 877, 881 (Tex.App.-Waco 1999, no pet.). Therefore, the assertion of a release is an affirmative defense. TEX.R. CIV. P. 94; *Dresser Indus.,* 853 S.W.2d at 508; *Lehmann,* 76 S.W.3d at 565.

■■■ When a non-movant asserts an affirmative defense in response to a summary judgment motion, the non-movant must support the response with evidence sufficient to raise a fact issue on each element of the affirmative defense. *Am. Petrofina, Inc. v. Allen,* 887 S.W.2d 829, 830 (Tex.1994); *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984); *State Farm*

*Lloyds v. Borum,* 53 S.W.3d 877, 884 (Tex. App.-Dallas 2001, pet. denied).

To support the affirmative defense of release, National Café attached a copy of the release to its response. The release reads in pertinent part as follows:

> In consideration of the release by Lender of Podaras as set forth in paragraph 6 hereof and of the other releases and agreements of Lender set forth herein . . ., Podaras hereby releases, acquits, and discharges Lender, the Partnership, the Limited Partner, and Angelika, and the officers, directors, partners, owners, agents, employees, attorneys, successors, heirs, legal representatives, and assigns of each of them, of and from any and all claims, demands, actions, causes of action, fees, costs, expenses, attorney's fees, liabilities, and other obligations of any kind whatsoever, whether known or unknown, asserted or unasserted, in contract, tort, or otherwise, liquidated or unliquidated, in any manner arising out of, caused by, related to, or emanating from any transactions, relationships, or occurrences involving any of the released parties which Podaras may have as of the date of this Agreement.

Podaras replied to this assertion in the trial court by arguing that section 15.52 preempts the common-law affirmative defense of release. On appeal, he re-urges this argument and also contends that the release does not apply to his suit because the facts giving rise to his suit (namely, the applicability of the covenant to his operation of the Gatsby Social Club) did not occur until after he executed the release. *See Keck, Mahin & Cate v. Natl. Union Fire Ins. Co.,* 20 S.W.3d 692, 698 (Tex.2000) (release agreement which released claims attributable to services rendered between two dates certain did not

apply to claim attributable to services rendered after that time period).

■ Podaras did not present the latter argument to the trial court in his summary judgment pleadings. Accordingly, we do not consider it on appeal. *See Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996); *Fletcher v. Edwards*, 26 S.W.3d 66, 74 (Tex.App.-Waco 2000, pet. denied).

Section 15.52 provides:

The criteria for enforceability of a covenant not to compete provided by Section 15.50 of this code and the procedures and remedies in an action to enforce a covenant not to compete provided by Section 15.51 of this code are exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures and remedies in an action to enforce a covenant not to compete under common law or otherwise.

Tex. Bus. & Com.Code. Ann. § 15.52.

Section 15.52 preempts the common law in two respects: (1) it provides that the criteria of section 15.50 are the exclusive criteria for determining the enforceability of a covenant not to compete; and (2) it provides the exclusive "procedures and remedies in an action *to enforce* a covenant not to compete." *Id.* (emphasis added); *see Gage Van Horn & Assocs., Inc. v. Tatom*, 26 S.W.3d 730, 733 (Tex.App.-Eastland 2000), *pet. denied per curiam*, 87 S.W.3d 536 (Tex.2002).

■ Section 15.52 does not preempt National Café's release claim because Podaras did not file suit *to enforce* the covenant and because National Café does not contend that the release makes the covenant enforceable. Rather, National Café contends that the release prevents Podaras from contesting its enforceability.

National Café, as non-movant, raised a fact issue as to whether the release estops Podaras from contesting the enforceability of the covenant. *See Am. Fracmaster*, 71 S.W.3d at 389–90. Accordingly, Podaras failed to establish his entitlement to judgment as a matter of law. For this reason, we sustain National Café's first issue.

Because our disposition of National Café's first issue requires a reversal, we do not reach the remainder of National Café's issues.

## APPROPRIATE DISPOSITION

National Café's prayer for relief reads as follows:

For these reasons, Defendant respectfully asks this Court to reverse the summary judgment granted by the trial court declaring that the Covenant is unenforceable and render judgment that Plaintiff take nothing by his claim. Defendant also respectfully asks this Court to reverse the trial court judgment and render judgment that Plaintiff take nothing by his claim for attorney's fees. Finally, Defendant seeks such other and further relief to which it may show itself justly entitled.

Podaras contends that National Café's prayer for reversal and rendition precludes this Court from reversing the judgment and remanding this cause for further proceedings in the trial court.

Rule of Appellate Procedure 38.1(I) requires the appellant's brief to "contain a short conclusion that clearly states the nature of the relief sought." Tex.R.App. P. 38.1(I). Rule of Appellate Procedure 38.9 requires an appellate court to liberally construe briefs. *Id.* 38.9. We have previously addressed these provisions in the context of a similar issue in a criminal appeal. *See Brown v. State*, 35 S.W.3d 183, 189–90 (Tex.App.-Waco 2000), *rev'd on other*

*grounds,* 89 S.W.3d 630 (Tex.Crim.App. 2002).

Quoting the Dallas Court of Appeals, we stated:

> These rules suggest that the prayer's irregularity of form or substance does not limit the relief available to a party. To the extent that the error is flagrant, the court may order a party to redraft his prayer. However, the rules prevent this court from tailoring its relief because of the violation of briefing rules without first giving the errant party an opportunity to cure the defect. Thus, we conclude that this court is not limited to remand of the cause because of a party's omission of a request for rendition when the disposition of a party's points entitles him to rendition.

*Id.* (quoting *Kaspar v. Thorne,* 755 S.W.2d 151, 156–57 (Tex.App.-Dallas 1988, no writ)).

Following this rationale, we reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice, concurring.

The majority opinion addresses more than is necessary for a final disposition of this appeal. I concur in the result reached by the majority but on different and more concise bases.

First, National Café has consistently defended the validity of the non-compete agreement as an enforceable agreement. This is a valid defense, not a claim for affirmative relief, to Podaras's suit for declaratory judgment, including the motion for partial summary judgment which sought a judgment declaring that the non-compete agreement is unenforceable. Because our action in either affirming or reversing the trial court's order granting partial summary judgment would affect substantial rights of the parties, a live controversy exists; and the validity of the summary judgment declaring the agreement to be unenforceable is not moot. *See Pinnacle Gas Treating, Inc. v. Read,* 104 S.W.3d 544, 545 (Tex.2003).

Second, the non-compete agreement is part of a larger agreement between the parties that is over 60 pages in length and contains many other terms, provisions, and obligations. It is ancillary to an otherwise enforceable agreement. *See Light v. Centel Cellular Co.,* 883 S.W.2d 642, 647 (Tex. 1994).

The proper remedy, for overbreadth, if any, of the non-compete agreement is reformation, not a declaration that it is unenforceable. TEX. BUS. & COMMERCE CODE ANN. § 15.51 (Vernon 2002). And I find no other basis upon which the trial court could have based its judgment.

Because the trial court erred by rendering judgment that the agreement was unenforceable without reforming the agreement as required by statute, the trial court erred. Accordingly, I concur in the judgment reversing and remanding this cause to the trial court for further proceedings consistent with this opinion.